UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | |
|---|---|
| ISABEL M. SMITH, ) | |
|     Plaintiff, ) | |
| ) | Civil Action No. 2:11-0065 |
| v. ) | Judge Nixon/Brown |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
|     Defendant. ) | |

To:     The Honorable John T. Nixon

**REPORT AND RECOMMENDATION**

This is a civil action filed pursuant to 42 U.S.C. § 405(g) and 1383(c)(3) to obtain judicial review of the Commissioner of Social Security denying plaintiff Isabel M. Smith's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles II and XVI of the Social Security Act (Act). Currently pending before the Magistrate Judge is Plaintiff's Motion for Judgment on the Record and Defendant's response. The Magistrate Judge has also reviewed the administrative record (hereinafter "Tr."). (Docket Entry 10). For the reasons set forth below, the Magistrate Judge hereby **RECOMMENDS** Plaintiff's motion be **DENIED** and this action be **DISMISSED**.

**I. INTRODUCTION**

Plaintiff first filed for SSI and DIB on October 6, 2008, with an alleged onset date of February 28 of that year. (Tr. 82-90). Plaintiff's claims were denied initially on December 3, 2008 (Tr. 36) and on reconsideration on April 30, 2009. (Tr. 40). On May 27, 2009, Plaintiff filed a request for a hearing before an Administrative Law Judge. (Tr. 46). This hearing took

1

place on April 14, 2010. (Tr. 55). On June 2, the ALJ ruled that Plaintiff was not disabled within the meaning of the Act from the onset date through the date of the decision. (Tr. 15-16).

In the decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since February 28, 2008, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative joint disease and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she has limited use of her lower extremities, cannot be around heights or hazardous machines, dust, fumes or gases. She experiences mild pain and can only perform occasional posturals and no climbing of ladders. Light work involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds, as well as sitting, standing and walking for 6 hours in an 8-hour workday.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 28, 1961 and was 46 years old, which is defined as a younger individual age 18-49, on the disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

On June 1, 2011, the Appeals Council denied Plaintiff's request for review. (Tr. 1). Plaintiff then filed this action on June 20, 2011. (Docket Entry 1).

## II. REVIEW OF THE RECORD

Plaintiff was born on April 28, 1961. (Tr. 23). She is claiming disability based on degenerative joint disease, obesity and asthma. (Tr. 36). Prior to her medical conditions, Plaintiff worked as a nursing assistant. (Tr. 111).

A. Medical Record

Plaintiff has a long history of knee pain issues. In 1998, Plaintiff visited Dr. Daniel Vandelune due to pain in her right knee. (Tr. 152). After a successful procedure on that knee, Plaintiff returned to Dr. Vandelune for pain in her other knee in 2000. (Tr. 156). Dr. Vandelune diagnosed this pain as a bone bruise, and the pain subsided after a few weeks. (Tr. 159). Dr. Vandelune then released her to regular work. *Id.* Plaintiff returned to Dr. Vandelune in 2001, complaining of severe knee discomfort. (Tr. 161).

In August of 2001, Plaintiff started visiting Dr. Scott Meyer for the knee pain. (Tr. 162). After some unsuccessful treatments, Plaintiff demanded and received surgery—a left knee arthroscopic debridement—later that year. (Tr. 169-70). After a brief period of feeling better, Plaintiff returned due to more knee pain in January of 2002. (Tr. 171-73). These symptoms subsided, but later returned in the fall of that year. (Tr. 176-178). Plaintiff continuously

requested a total knee replacement during those visits, but Dr. Meyer strongly recommended against it due to her young age. (Tr. 177).

Plaintiff returned to Dr. Meyer in 2004 after re-aggravating her knee. (Tr. 178). After another failed treatment, Plaintiff received a total left knee replacement on December 14th of that year. In appointments the following months, Plaintiff walked with a non-antalgic gait and reported that her knee felt better than before surgery. (Tr. 186).

On March 25th of 2005, Plaintiff visited Dr. Mark Matthes for right knee pain following a fall at work. (Tr. 187). After conducting an examination, Dr. Matthes restricted Plaintiff from stooping, squatting, kneeling or bending at work, amongst other restrictions. (Tr. 188). Dr. Matthes also prescribed pain medication for Plaintiff. Dr. Matthes planned to wait two weeks to see if the knee would improve before a follow-up.

Plaintiff instead returned to Dr. Meyer in June of that year, stating that her knee felt well. (Tr. 189). She returned again to Dr. Meyer in December of 2005, stating that she was very happy with her knee and that she had lost 60 pounds. (Tr. 190). Plaintiff returned to Dr. Meyer for her two-year follow up in January of 2007. (Tr. 191). Plaintiff reported that she was doing very well and had no limitations on work, daily living or hobbies.

After moving to Tennessee in 2008, Plaintiff began receiving treatment from the Overton County Health Department. (Tr. 194). Plaintiff was received exams for morbid obesity, asthma, hyperthyroidism, hyperlipidema, GERD and menopause. (Tr. 194). On examination on March 26th, the doctor marked Plaintiff as "normal" except for her skin and lungs. (Tr. 211). By June 17, 2008, Plaintiff tested normally in entirety. (Tr. 207).

On October 13, 2008, Plaintiff made her first visit to Dr. Matthew Gasper. (Tr. 319). Dr.

4

Gasper treated Plaintiff for foot pain, removing a shard of glass from the left foot. (Tr. 320). Dr. Gasper noted that Plaintiff walked with a normal gait.

On December 3, 2008, Dr. Stephen Burger conducted a residual functional capacity (RFC) evaluation on Plaintiff. (Tr. 223). Dr. Burger found that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, and stand and/or walk 6 hours of an 8-hour workday. (Tr. 219). He also found that Plaintiff could frequently stoop, kneel, crawl, and climb ramps and stairs, though she could only occasionally crouch and could never climb ropes, ladders or scaffolds. (Tr. 220). Dr. Burger also noted that Plaintiff walked without assistance. (Tr. 222).

On April 16, 2009, Dr. Donita Keown examined Plaintiff for Tennessee Disability Determination Services. (Tr. 244). Dr. Keown noted that Plaintiff could walk without an assistive device unremarkably, but occasionally complained of left knee pain and had a slight limp. (Tr. 246). Dr. Keown opined that Plaintiff had mild degenerative joint disease in the right knee and residual discomfort from the knee replacement in the left knee. Dr. Keown further opined that Plaintiff could sit 8 out of 8 hours in a workday, walk or stand 3 or 4 out of 8 hours in a workday, and could occasionally lift 10-15 pounds. Dr. Keown further noted that there is no clear evidence that Plaintiff would require a hand-held assistive device to walk.

On April 28, 2009, Dr. Carol Lemeh examined Plaintiff again. (Tr. 256). Dr. Lemeh found that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and or walk for 6 of 8 hours in a workday, sit for about 6 of 8 hours in a workday, and was limited in lower extremities in pushing or pulling. (Tr. 249). Dr. Lemeh further found that Plaintiff could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs,

5

but could never climb ladders, ropes or scaffolds. (Tr. 250). Dr. Lemeh also opined that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and general hazards. (Tr. 252). The doctor noted that Plaintiff's allegations of pain were plausible, but that the medical record and Plaintiff's description of her daily activities did not fully support the severity and intensity of the pain. (Tr. 253). Dr. Lemeh opined that Dr. Keown's report was too restrictive, given Dr. Keown's own notes. (Tr. 254).

Plaintiff returned to Dr. Gasper in June of that year, complaining of shortness of breath and other breathing problems. (Tr. 314). Dr. Gasper noted largely normal results, with some moderate tenderness in the right knee. (Tr. 316). In an exam later in the month, Dr. Gasper noted right knee osteoarthritis and some calcific densities behind the knee. (Tr. 317). In December of 2009, Plaintiff underwent treatment under Dr. Gasper for an anal fissure, and underwent a colonoscopy. (Tr. 304).

Dr. Gasper delivered a sworn statement regarding Plaintiff's RFC on March 9, 2010. (Tr. 321-33). Dr. Gasper stated that he had treated Plaintiff three times on the record, and many more times off the record when she came in with her partner. (Tr. 324). The doctor opined that Plaintiff would be incapable of performing even low stress jobs given her weight, asthma and emotional state. (Tr. 329). He further opined that Plaintiff could sit for an hour or two in an 8-hour workday, stand or walk for less than an hour, walk one block one block at a time and lift or carry 5-8 pounds. (Tr. 330-31). He also stated that Plaintiff would likely be absent from work 6-8 days a month due to her impairments. (Tr. 332).

B. <u>Hearing Testimony</u>

Plaintiff testified before the ALJ during her appeal hearing. (Tr. 22). Plaintiff arrived to

the hearing using a cane, which she claims was prescribed. (Tr. 28). Plaintiff claimed she could stand for ten minutes tops, sit for 20-30 minutes, and walk for a one-half to one city block. (Tr. 24). She claimed that she could not squat, and could only lift four or five pounds. *Id.* She stated that she could bathe herself, do laundry, prepare food, and shop for groceries. (Tr. 25).

The court's Vocational Expert (VE) stated that if Plaintiff's testimony were given full credibility, Plaintiff would be unable to perform any work. (Tr. 30). The ALJ gave the VE a hypothetical of someone who could walk, sit and stand 6 of 8 hours in a workday, occasionally lifting or carrying 20 pounds, and frequently lifting or carrying ten pounds. (Tr. 29). The ALJ provided that the person would have limited lower use of extremities, only occasional posturals, no climbing of ladders or exposure to heights, hazardous machines, dust fumes or gases, all while experiencing mild pain. The VE stated that this person could not perform Plaintiff's prior work, but could perform light jobs such as food preparation worker or cashier. (Tr. 30).

### III. PLAINTIFF'S STATEMENT OF ERRORS

Plaintiff alleges three errors for review. First, that the ALJ failed to consider the opinion of Dr. Matthes. Second, that the ALJ's RFC finding is not supported by substantial evidence. Third, that the ALJ failed to evaluate Plaintiff's need for a hand-held assistive device.

A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *See Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, failing to consider the record as a whole undermines the Commissioner's conclusion. *See Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

B. <u>Proceedings at the Administrative Level</u>

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

---

[1] The Listing of Impairments is found at 20 C.F.R., pt. 404, Subpt. P, App. 1.

4.  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

5.  Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Even once analysis has reached step five, it remains the burden of the claimant to prove the extent of the disability. *Her,* 203 F.3d at 391. In determining residual functional capacity for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and non-severe. *See* 42 U.S.C. § 423(d)(2)(B).

C. <u>The ALJ Properly Evaluated Dr. Matthes' Assessment</u>

Plaintiff argues that because Dr. Matthes was a treating physician, the ALJ failed to address Dr. Matthes' assessment properly. Defendant argues that because Plaintiff only visited Dr. Matthes once, he does not qualify as a treating physician. Defendant further argues that even if he were a treating physician, the ALJ addressed Dr. Matthes' assessment properly.

In evaluating medical opinions, the Commissioner must weigh the following factors: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors. 20 C.F.R. § 404.1527(c). If the treating doctor's opinion is well-supported and consistent with the other evidence on the record, the Commissioner awards that opinion controlling weight. *Id.* Treating physicians receive deference because they can

9

provide a "detailed, longitudinal picture" of the claimant's medical impairments. 20 C.F.R. § 404.1527(c)(2). The ALJ must articulate a reason when rejecting the opinion of a treating physician. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). Aside from the treating physician rule, reviewing courts may not resolve conflicts of evidence or questions of credibility. *Floyd v. Finch*, 441 F.2d 73, 75 (6th Cir. 1971).

Here, substantial evidence supports the ALJ's decision to treat Dr. Matthes as a non-treating physician. Plaintiff only visited Dr. Matthes once, for a worker's compensation claim. A single visit does not represent the kind of relationship that deserves a special deference. Since Plaintiff only visited Dr. Matthes once, the doctor can hardly provide a detailed, longitudinal picture of Plaintiff's impairments. Dr. Matthes deserves no greater deference than the other examining physicians.

In addition, Dr. Matthes' evaluation and restrictions do not conflict with the ALJ's evaluation. The doctor's weight restriction, 20 pounds, is the same as the ALJ's final RFC evaluation. The direction to avoid stooping, squatting, kneeling and bending does not specify how often she is allowed to do so, thus "occasional" posturals may not be in conflict with the doctor's assessment. Lastly, given that he wanted to check for improvements in two weeks, Dr. Matthes clearly meant the restrictions be temporary. These temporary restrictions were set years before the alleged onset date, so they are not especially meaningful.

Since there is substantial evidence to support Dr. Matthes' status as a non-treating physician, the ALJ's procedural assessment of the record was proper on this issue. There is no requirement for the ALJ to discuss each doctor's report in the record, or describe why each doctor is or is not a treating physician.

D.  The ALJ's RFC Finding is Supportedd by Substantial Evidence

Plaintiff next alleges that because the ALJ failed to consider Dr. Matthes' restrictions and Plaintiff's testimony, the ALJ's RFC finding is not backed by substantial evidence. Plaintiff argues that her inability to stoop means that even sedentary work is significantly eroded, let alone light work. Defendants respond by citing significant objective evidence that supports the ALJ's conclusion.

In evaluating subjective claims of pain, the Secretary must examine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition, or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). Even when there is medical evidence of an impairment that could reasonably be expected to produce the alleged symptoms, the ALJ is not required to credit the claimant's testimony. *Jones v. Commissioner*, 336 F.3d 469, 475 (6th Cir. 2003).

If the ALJ rejects claims of pain as incredible, he must clearly state his reasons for doing so. *Id.* at 1036. Once a credibility assessment is properly made, this assessment "must be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997). An ALJ finding that claims of pain are incredible must be supported by substantial evidence on the record, just like any other factual finding. *Doud v. Commissioner*, 314 F. Supp. 2d. 671, 678 (E.D. Mich. 2003).

Here, there was certainly substantial evidence to support the ALJ's RFC finding. Both the objective medical evidence and Plaintiff's testimony lend support to the finding. The ALJ

11

also clearly stated the reasons to discount Plaintiff's subjective claims of pain. Lastly, the assertion that Plaintiff cannot stoop does not defeat the RFC evaluation.

The majority of the doctors' RFC assessments supports the ALJ's RFC finding. The assessments of Drs. Burger and Lemeh both directly support the ALJ's finding in all aspects. The ALJ discounted Dr. Keown's more restrictive assessment, but gave reasons for doing so. Even if he had not given reasons, Dr. Keown was not a treating physician. As such, she is awarded no special deference that would defeat the ALJ's finding.

Similarly, substantial evidence supports the ALJ's reasoning for discounting Plaintiff's claims of pain. In the opinion, the ALJ pointed out that Plaintiff's description of her activities conflicts with her claims of pain. (Tr. 12). The ALJ also noted that the objective medical evidence, including the doctor's reports, did not support Plaintiff's alleged pain. Given the great weight and deference afforded to the ALJ on credibility findings, there is no basis to overturn the finding.

While Plaintiff makes a legal argument that the inability to stoop prevents light work, this ignores the ALJ's RFC finding. The ALJ found that Plaintiff could occasionally stoop, and as discussed earlier, substantial evidence supports this finding. Plaintiff appears to base this restriction on Dr. Matthes' work restriction, but even that report does not say Plaintiff could *never* stoop, as argued in Plaintiff's brief.

E. <u>The ALJ Properly Considered Plaintiff's Use of an Assistive Device</u>

Plaintiff argues that the ALJ failed to consider whether Plaintiff required a hand-held assistive device (or "cane"). Plaintiff cites Social Security Ruling 96-9p, and alleges that failure

to consult a vocational expert on the cane should prompt a remand.  Defendant argues that the ALJ fully considered Plaintiff's use of an assistive device, and points to the objective evidence that contradicts Plaintiff's testimony regarding the need for a device.

Social Security Ruling 96-9p states that to find that a hand-held assistive device is medically required, there must be medical documentation establishing the need, and a description of the circumstances of when it is needed.  SSR 96-9p, 61 Fed. Reg. 34478 (July 2, 1996).  Should a need for a cane be established, "It may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work." *Id.*

Here, the ALJ properly considered the evidence regarding Plaintiff's use of a cane.  Contrary to Plaintiff's assertion, the ALJ did discuss Plaintiff's use of a cane.  Even if not, Plaintiff failed to establish the need for the cane with medical documentation.  Since the ALJ properly found that Plaintiff did not require a cane, the ALJ was not required to consult the VE on the effect of a cane requirement.  Lastly, neither of the cases cited by Plaintiff indicate that the ALJ must find the need for a cane based on subjective evidence.

The ALJ clearly discusses and dismisses Plaintiff's allegation of a need for a cane.  (Tr. 12, 14).  The ALJ discussed Dr. Keown's report, including her finding that Plaintiff walked equally well both with and without an assistive device.  The ALJ also explicitly stated that there "does not appear to be a medical necessity for claimant to use an assistive device when ambulating per clinical exam findings."  Dr. Burger's evaluation also supports this finding, stating that Plaintiff could walk without assistance.  Substantial evidence backs the ALJ's finding that Plaintiff did not require a cane.

13

Even if the ALJ had not discussed the use of the cane, Plaintiff failed to provide medical documentation of its requirement. The only evidence supporting a cane requirement comes from Plaintiff's testimony. All actual medical documentation actually suggests that Plaintiff did *not* require a cane. If the ALJ had found that Plaintiff required a cane, that finding may have been improper under Social Security Ruling 96-9p.

The cases that Plaintiff cites for the cane requirement are entirely distinguishable from this case. Plaintiff first cites *Burns v. Astrue*, 2009 WL 950773 (C.D. Cal. Apr. 7, 2009), and suggests that this case states that an ALJ must provide reasoning for rejecting subjective evidence of a hand-held assistive device requirement. This is not the issue in the case. In *Burns*, the treating physician found that the claimant required a cane, but the ALJ dismissed this evidence based on an previous report from a consultative examiner.[2] *Id.* at *6. Thus, there was objective medical evidence for a cane requirement, and it came from a source with great weight. The issue decided in this case was a conflict of objective evidence, not a lack of evidence.

Plaintiff's citation to *White v. Barnhart*, 153 Fed Appx. 432 (9th Cir. 2005), is similarly unhelpful. In *White*, an ALJ concluded that a claimant did not require a cane based solely on a doctor's failure to check an ambiguously worded box regarding an assistive device requirement. *Id.* at 433. The rest of the doctor's report strongly indicated a need for an assistive device. Here, there is no medical evidence for a need for an assistive device.

---

[2]In the brief, Plaintiff quoted the case: "[T]he ALJ erred by failing to properly consider or provide sufficient reasons for rejecting such evidence in determining the plaintiff's RFC." (Docket Entry 13). The first half of the quoted sentence states, "Given that there is medical evidence in the record to establish plaintiff's need for a cane to help her ambulate . . . ." *Burns*, 2009 WL 950773 at *6. The unadulterated quote actually implies the opposite of Plaintiff's argument.

## IV.  RECOMMENDATION

In light of the foregoing, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion be **DENIED** and the action be **DISMISSED**.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court.  Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections.  Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 16th  day of July, 2012.

/S/ Joe B. Brown
_____
JOE B. BROWN
United States Magistrate Judge